170     SUPREME COURT OF GEORGIA.

McKenny *et al. vs.* Compton, Surv. Gen. &c.

No. 16.—JOHN McKENNY and others, plaintiffs in error, *vs.* PLEASANT M. COMPTON, Surveyor General, &c. defendant in error.

[1.] The Act of 21st of December, 1843, limiting the time in which grants should be taken out for lands drawn by orphans, &c. in the land and gold lottery of 1832, is not unconstitutional.

[2.] The time from which the limitation of twenty-one years shall commence to run, is the date of the drawing, and not the close of the lottery.

*Mandamus,* in Baldwin Superior Court. Decided by Judge HARDEMAN, February Term, 1855.

The petition for *mandamus* in this case, alleged that the petitioners were the orphans of William Bowen; and as such, had drawn in the lottery of 1832–'3, Lot No. 141, 17th Dist. 1st Sect. of originally Cherokee, now Union County; that said lottery closed in July, 1833, before which time the petitioners had removed to the State of Mississippi, where they have since resided; that on 1st April, 1854, they complied with all the prerequisites of the Act and applied to the Surveyor General for a plat and grant, which he refused to issue. A *mandamus nisi* to the Surveyor General was granted. In return thereto, he admitted the facts as alleged in the petition, and added, that to the best of his information, the petitioners drew said lot on 23d November, 1832, more than 21 years before their application for a grant in April, 1854;

McKenny *et al. vs.* Compton, Surv. Gen. &c.

:and that under the Act of 1843, they had thereby forfeited their rights.

On hearing the return, the Court below refused a *mandamus* absolute, and this is the error assigned.

H. COBB ; ROCKWELL ; KENAN, for plaintiffs in error.

McKINLEY, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] It is first argued for the plaintiff in error, that the Act of 1843, limiting the time during which orphans, &c. may take out grants for lands drawn in the land and gold lottery of 1832, to twenty-one years from the drawing, was unconstitutional, because it impaired the obligations of the contract into which the State entered with the fortunate drawer, when it passed the Act of 1830 authorizing this lottery ; in which Act there was no such limitation.

The error of this position lies in the assumption, that the Act of 1830 was in the nature of a contract with the drawer. It authorized the lottery upon the terms prescribed, and admitted the citizens of the State, upon those terms, to take chances in the same. When any such chance resulted in a prize, the drawing (as this Court has said in the case of *Winter vs. Jones*, 10 *Geo.* 190,) did not vest the title. It simply clothed the drawer with the pre-emption right, as it were, of taking the land at the price of the grant. Such provision, too, was gratuitous on the part of the State. And it would be extremely unreasonable, under these circumstances, to hold that the State was bound, by contract, to recognize this pre-emption right forever, although the drawer manifested no intention ever to apply for the grant or to take possession of the land. It was but just, therefore, that the Legislature should fix the term of twenty-one years from the date of the drawing, as the period in which the drawer, if an orphan, would have ample time to secure a grant ; and at the end of which,

if application was not made for such grant, it might be safely assumed that all intention of applying for the same was abandoned.

This opinion is not in conflict with the case of *Winter vs. Jones.* There the lot had been purchased at a sale of fractional lots, authorized by Act of the Legislature, for a consideration, to-wit: the sum of $1550 had been paid, in full, to the State, for the same ; and the Court held that the Legislature could not afterwards forfeit the grant because it was not applied for in the time prescribed by the Act of 1847. This Court, in that case, in effect, recognize the distinction between the circumstances of that case and such a case as that now before us.

[2.] The next question for our consideration is, whether the limitation in this case shall run from the day on which the lot was drawn ; that is to say, from *the drawing of the lot,* or from *the close of the lottery ?*

The language of the Act of 1843 is, that the operation of the Act shall not apply to orphans " until twenty-one years shall have expired after *the drawing of such orphan or orphans,*" &c. Not *the drawing of the lottery.* The limitation of the Act of 1830, upon the issuing of a grant to a fortunate drawer, other than an orphan, &c. was, that he should " take out his grant within five years from the date of said *draw.*" In the Act of 1854, referring to this subject, the words are also, " all lands drawn by orphan or orphans, and not granted within twenty-one years after the *drawing,*" &c.

On the whole, we think it quite clear, that the Legislature had in view the day on which the land was drawn, and not the close of the lottery, as the period from which the limitation should commence its operation.

We are not insensible to the practical difficulties which may lie in the way of showing, by proper proof, the date of each " draw." And this certainly affords a plausible argument, that the close of the lottery, when the returns were made by the commissioners, should have been made the time from which the limitation should begin to run.

But we regard the language of the Legislature as so plainly expressing a different intention, that we must decide accordingly, and leave the matter and method of proof to those whose interests are involved, and to those whose duty it is to administer the law in the issuing of grants; simply adding, that the proof should, of course, be such as is consistent with the rules of evidence and principles of justice.

Let the judgment be affirmed.